The court now calls case 118562 Zlata Petrovic v. Department of Employment Security. Are you ready to proceed? Ready? Good morning. May it please the court. My name is Miriam Hallbauer and I represent the plaintiff appellant Zlata Petrovic. The defendants, the Illinois Department of Employment Security and its board denied Ms. Petrovic unemployment benefits after she lost her job of over 20 years with American Airlines. She was working as a tower planner when she got a call from a former colleague asking whether she could do something for a passenger who was traveling overseas. She said she would try to help. It was New Year's Day, so she called catering and asked whether a bottle of champagne could be sent to the plane. She asked the flight attendant whether it was possible for the passenger to be upgraded to first class. She advised the gate attendant that the upgrade might happen, and then she left. American said that it fired her because the passenger was then found, before takeoff, sitting in first class. At her unemployment hearing, when asked to describe Ms. Petrovic's involvement in that incident, the employer said, quote, questions were asked of the wrong people and that Ms. Petrovic most likely moved the passenger. It referred vaguely to policies and procedures of having management approval, but it stated no rule that she violated and no actual harm that she caused. The question in this case is not whether American had a right to expect different conduct from Ms. Petrovic, and it's not whether the employer had the right to terminate the employment. The question is just whether Ms. Petrovic's actions amounted to misconduct under the Unemployment Act and therefore grounds to disqualify her from benefits. A claimant like Ms. Petrovic, who is otherwise qualified for benefits, can be disqualified if terminated for misconduct, but the legislature has specifically defined and limited that term to a willful and deliberate violation of a reasonable rule or policy, provided that the violation has harmed the employer or was repeated after a warning. Misconduct is not the same as a good or valid reason to terminate employment. More is required, willful violation of a rule and absent a warning for the same conduct harm. Ms. Petrovic did not commit misconduct because she violated no rule and because her actions didn't harm the employer. Each of these reasons independently require reversal of the board. When the circuit court did reverse the board, it was the board that appealed, not American. The appellate court held that the defendants had standing to file an appeal of the reversal of their own decision on administrative review. I'd like to talk about each of these errors in turn. First, the Unemployment Act requires the employer to establish a rule or policy that the employee violated, which it did not do in this case. The plain meaning of rule or policy requires a statement or a guide that's provided in advance to govern conduct. And the board dispensed with that requirement. It held that Ms. Petrovic's conduct should be so commonly accepted as wrong that the employer doesn't need a rule. The appellate court agreed with that and held that standards of behavior that an employer has a right to expect can constitute, in other words, stand in for the rule. That holding contravenes the unambiguous meaning of rule or policy, and it also thwarts the legislature's intent. And we know that because the common law definition, which this court adopted in 1985 of misconduct, used to permit this qualification on the grounds relied on by the appellate court, standards of behavior that the employer has the right to expect. But just two years later, the legislature amended the definition, and it didn't adopt that language, standards of behavior the employer can expect. It used different phrasing, willful and deliberate violation of a reasonable rule or policy. The former is a unilateral employer expectation. The latter requires a guideline communicated in advance to the employee that the employee makes a deliberate choice to violate. Does the language in Section 602A require that the employee actually be aware that she is violating a specific rule or policy? Yes, Your Honor, it does. In the language willful and deliberate, that means that the employee has to know about the rule and violate it on purpose. So willful and deliberate violation means that the employee knows about the rule and violates it on purpose. It's also inherent, I think, in the concept of a reasonable rule, because a rule that's not known to an employee can't be reasonable. Would your argument require that the employer make an express rule for every possible kind of misconduct? The Unemployment Act doesn't dictate what rules the employer has to have or not have. But it does require that there be a rule to disqualify an employee from benefit. So in other words, the employer doesn't have to have rules at all. But if it fires an employee who hasn't violated a rule, then that employee is entitled to benefit. An employer that wants to fight every claim for benefit would be well advised to have rules that govern conduct. If the employer becomes aware of conduct that isn't covered by a rule, all the employer has to do is promulgate a rule. So if an employee did something that was highly dangerous, for example, in the work setting, unfortunately nobody got injured, unless there was an express rule prohibiting that, the employer could not fire them. The employer could terminate, but the employee would be entitled to benefit. Now, Ms. Petrovic does allow that if an employee violates the law, then the purpose of the rule requirement is met. So in other words, everyone is charged with knowing what the law is. So if an employee violates a criminal law or another law that governs the employee's conduct at work, then that can stand in for a rule. So the highly dangerous conduct that you're hypothesizing could fall into that category. Defendants proposed that there was evidence that American had a rule requiring management approval for passenger upgrades. Is that not correct? It's not correct. First of all, there's no evidence in the record of management approval for passenger upgrades. I think that comes, and the board didn't make a finding that there was. The appellate court thought that there was evidence. But the board said, didn't say there was a rule about management approval. The board said, we don't need a rule for this. But if there was that rule, it's not a reasonable rule because it's vague and amorphous. It doesn't say what the employee had to do or was prohibited from doing. And it was never submitted at the hearing. Where the appellate court got that was from the employer's protest. And the protest was something that was never mentioned at the hearing, and it wasn't even prepared by the employer. It's prepared by a consultant. And it's really just a notice that the employer is going to fight the claim for benefits. It's in no way competent evidence that could provide proof of a rule that you need management approval. But if it was such a rule, it wasn't reasonable for one reason, because Ms. Petrovic did testify at the hearing, uncontradicted, that she was not aware of any such rule. So even if there were such a rule, she wasn't aware of it. It's not a reasonable rule. What the board did in this case was it substituted common sense standards for the requirement of a rule. It dispensed with the requirement of a rule. And common sense expectations is a much less workable, predictable, and fair standard than what the legislature wanted when it defined misconduct. Because common sense varies widely from workplace to workplace, and this is a perfect example of that. It changes over time. Ms. Petrovic said in her testimony and in other submissions to the board, I used to work at the gate. I used to work on the plane. Fifteen years ago, it was really common for gratuities to be given out on an informal basis. Maybe that has changed over time. But common sense does change over time. And it's so variable and subjective that it ends up disqualifying people like Ms. Petrovic whose conduct is at worst just an error of judgment that's well-meaning, but that the employer doesn't approve of. There's no reasonable reading of this record where Ms. Petrovic chose to violate a rule that she knew would or could get her fired. There's no such rule in the record, and the employer failed to meet its burden. And I do want to talk about that it was the employer's burden to prove that there was a rule. The Illinois Appellate Court has held in numerous cases that the employer has the burden of proving misconduct, and it emphasizes that that's a higher burden than just showing that the employer made a reasonable decision to terminate the employment. Every state's high court that has reached the issue has held that establishing a misconduct disqualification is the employer's burden. So if Illinois held otherwise, it would be a minority of one. This court has held that when courts assign a burden of proof, it assigns it to the party who, given the structure of the law and the nature of the case, is going to possess the relevant proof. In an unemployment case, it's always going to be the employer who has proof of what rules it has and whether it caused harm. So those elements are the employer's burden to prove. Counsel, this comes to us on administrative review, correct? Yes. And so it's the record we have to look at factually. So tell me this. Within the confines of the record, why do you say it's not established that there's, and I'm not suggesting there is, I just want to know, that there is not a known reasonable rule? There's no competent evidence of a reasonable rule. There's no evidence of any rule that even talks about upgrades. Management approval isn't a rule because what we discussed. At best, it's evidence that there is a rule, but the employer has to say what the rule is. A rule has words. Okay. Well, let me back you up and ask it in a different way. The fellow named Bob Comley, I'm not sure if that's how it's pronounced, he testified at the ALJ hearing. How do you characterize his testimony on the issue of the rule? Well, his testimony is not competent evidence because he didn't have any personal knowledge of what happened. What he said was that she did wrong, that Ms. Petrovic did wrong, is questions were asked of the wrong people. So what Ms. Petrovic did was ask questions. Comley never said there's a rule that prohibits asking a flight attendant for an upgrade. There's a rule that prohibits calling catering and asking for a gift. All she did was ask questions, and Comley didn't provide evidence of a rule that said, you know, all upgrades have to go through so-and-so department. Okay. Let me follow up with this question. If I understand the facts correctly, Ms. Petrovic asked one of the flight attendants on that flight to make the accommodation. Is that correct? Asked if she could, yes. And that flight attendant said okay. She didn't say no. And the accommodation was made. We don't know that. We're not sure. According to Comley, the passenger was found in the first flight. Well, let me ask you this. Is it disputed or undisputed that a flight attendant did authorize the accommodation, whether it happened or not? Is my question clear or not? I think it is clear. I don't. So what's the answer? Is there evidence that the question is, is there evidence that the flight attendant authorized the accommodation? No. There's no evidence. I think it's disputed whether the flight attendant authorized the accommodation or whether the accommodation happened at all. Because Comley testified, Ms. Petrovic testified, and she's the only competent witness at the hearing. She testified that I asked this question and I got off the plane and I didn't know what was going to happen after that, whether the upgrade would happen or not. Comley says all of Comley's testimony is incompetent because he says he is getting his information from a report that was supposedly filed at the end of the shift. We don't know any of the sources of information in that report. We don't even know what the purpose of the report is. And that can be second, third, fourth-hand knowledge. We don't know. But even if we credit all that testimony, the passenger was found before takeoff, so if it wasn't authorized, then presumably it could have been undone and would have been undone. Is there any indication that the other employee was disciplined? The record is silent on that. And one last question. Did the employer file a formal protest? The employer filed a protest. And when the appellate court refers to the employer's letter in the record, that's what the appellate court is talking about, protest. And all the protest is, again, is a notice in response to IDES's notice to the employer that a claim has been filed. Thank you. That's all of it. The defendants have said that everything in the record is fair game as evidence because of Rule 405-801A, which talks about documents submitted by parties being competent evidence. That rule can't be as broad as defendants claim. It can't magically transform every piece of paper that makes it into a claimant's IDES file into competent evidence. Both the Administrative Procedures Act and IDES's own rule require that decisions be based on legally competent evidence. If any document that's submitted to IDES was automatically competent, this rule would become meaningless. Under the defendant's reading, no matter how incompetent, how devoid of co-operative value, as the protest plainly is, and I've talked about, the referee would have been required to consider it as competent evidence. But as we've seen, it's multi-layered hearsay. We don't even know how many layers of hearsay are there. We don't know who said what to whom. It would raise serious constitutional questions because due process protects the right of cross-examination and benefits cases. And defendants' own rule is to protect that right. Defendants' own brochure assures litigants that hearsay can't be the basis for the decision in their case. So in this case, the only rule that the defendants point to is it's not only an unreasonable rule and not a rule at all, but it's hearsay. It's based on incompetent evidence. So the employer failed to prove violation of a rule. I want to talk a little bit about the employer's failure to establish harm as well. Disqualification requires violation of a rule that has harmed the employer or other employees. The appellate court upheld the board on the ground that potential harm sufficed to meet this requirement, but it does not. The statute says, has harmed. That means harm that occurred in the past or continuing in the present. It doesn't include just potential harm. It doesn't say could have harmed, had the potential to harm. Has harmed means it has. The harm requirement follows the words provided that, meaning that this is a requirement that's additional to violation of a rule. Over the decades since it was created, the appellate court and IDF have expanded harm to include potential or presumed harm to such an extent. I just wanted to ask one question. Didn't the plaintiff receive a termination letter? She did. Weren't two rules addressed in the termination letter, Rule 16 and, I think, Rule 34? How was that addressed in the hearings? Those rules were not mentioned at all at the hearing, and the employer actually abandoned those claims. Initially, when the employer fired Ms. Petrovic, it gave her a letter and said, Here's what you did, and here are the rules that it violated. And the rules, 16 and, I think it was 23. Or 34. 34, sorry. Prohibit misrepresentation and dishonesty, theft. So, in other words, the employer said to Ms. Petrovic, Here's why we're firing you, because we think you did something dishonest when you asked these questions. But the employer abandoned that claim and never mentioned it at the hearing at all, presumably because it had no evidence that Ms. Petrovic did anything dishonest whatsoever. She openly asked questions. That's all she did. Every violation of a reasonable rule has at least the potential to cause harm, because every reasonable rule exists to prevent some harm to the employer's interest. So every firing for cause would meet the harm requirement if potential harm was enough to satisfy it. The alternative for conduct that's repeated after a warning would never even come into play. So the defendant's interpretation that permits potential harm to stand in for actual harm actually just nullifies half the statute. It nullifies everything after the words provided that. And that can't be right. In this case, there wasn't any harm shown, because the employer provided no evidence that the passenger actually obtained a first-class seat or champion. I see that my time is up. If the court has no other questions. Thank you. Thank you. Your Honor, may it please the Court, Assistant Attorney General Nadine Wickren, on behalf of the Illinois Department of Employment Security, its Director, and the Board of Review. As counsel noted, under the Unemployment Insurance Act, a claimant who has been separated from work may apply for unemployment benefits. But as the Act and the Department's regulations make clear, to receive such benefits, the claimant must prove that they are eligible to receive them. Petrovic was discharged by her employer after she arranged, without authorization from management, for a friend of a friend to receive a free bottle of champagne and a free upgrade to a first-class seat on an international flight for no valid business reason, essentially giving away her employer's property without any authorization. The Board ultimately determined that Petrovic was not eligible for benefits because she was discharged from misconduct under the Act. Petrovic sought administrative review, and the Circuit Court reversed. The State Defendants appealed to the Appellate Court, which reversed the Circuit Court's judgment, and this Court granted leave to appeal. The State Defendants today submit to this Court that the Appellate Court's judgment should be affirmed because first, the State Defendants had standing to appeal the Circuit Court's judgment to the Appellate Court. Second, the plain language of the Unemployment Insurance Act does not require an employer's reasonable rule or policy to be expressed, or that the claimant's violation of that rule or policy caused actual harm to the employer. And third, the Board's decision that Petrovic was discharged from misconduct was not against the manifest weight of the evidence or clearly erroneous. Because the standing issue may be dispositive in this case, I will start there. My opposing counsel did not speak much about standing, but I'll offer a little bit, and then if the Court has any questions, I'll take them on standing. The State Defendants had standing to appeal, as all the Appellate Courts to have decided this issue have found, because the State Defendants need to be able to, among other things, develop a uniform body of law on the meaning of eligibility under the Unemployment Insurance Act. As this Court is aware, in 1982, it held that an agency that is purely an adjudicative body does not have standing to appeal to defend its own decisions. And then in 1985, this Court in Braun created an exception to that rule for agencies that have extensive managerial responsibilities. We submit that the Illinois Department of Employment Security and its director and the Board of Review, as well as many other agencies, have been given that kind of authority by the General Assembly. The agency in Braun was a retirement board, which like here, besides deciding contested cases, had a duty to administer and interpret a statute to ensure that the legislative policy was being carried out. And this is because in that situation, even a decision in a contested case can impact the agency's ability to administer the law that it's charged with. Here, the State Defendants not only interpret the Act and promulgate regulations on the meaning of the term eligibility under the Act, they also administer the Unemployment Insurance Fund and have to comply with federal regulations, which place some limits on eligibility. So the ability to appeal a judicial decision reversing a board decision about eligibility is critical to its administration of the Act. Unless the Court has questions on standing, we also submit that a rule or policy need not be expressed. To start, we submit that there was a rule that was violated in this case and Cumley testified to that rule, which was that authority was needed. Petrovic herself admitted that she did not have authority to arrange for the champagne or the upgrade. So she acted without any authority. She did not seek management authority. And she essentially paved the way for giving away some of the employer's property without his authorization. Well, counsel, let me ask you this. I'm trying to understand the facts. They're actually in the record. I know she made the request, but who actually delivered the product? Okay. So the testimony was that she called catering, and catering brought champagne to the plane. She went, she left the tower. Remember, she works in the air traffic control tower. She used to work at the gate. So she's very comfortable with that. Okay, but my question was who delivered the product? The catering delivered the champagne. And the testimony for Cumley was that this person was sitting in the first-class seat when the plane took off. Well, who allowed her to sit in the first-class seat? The evidence was not clear on how that came about. Cumley said, you know, presumably she moved her, but it could well have been the flight attendant. There's no definite answer. Well, here's what I'm trying to understand. And I'm not having concluded anything by this question, but if the violation of the rule is placing the passenger in the seat and providing the champagne, how did this woman violate the rule in making those two things happen? That's what I'm trying to understand. I think that's sort of a narrow view of the rule. She arranged for all of these things to happen. She didn't have to do them herself to violate the rule. She acted with authority. She called the catering department, ordered the champagne. She went on board the plane and asked the flight attendant for this person to be moved. There was no indication that she didn't have authority for what she was doing. So, of course, she was met with a, that's fine, no problem. Based on Justice Kilbride's question, does that reflect that did she have authority to leave her position? You say she was in the tower. How did that happen? Right. There was evidence that that was improper. That was in the employer's protest. One of the things they listed as why she was being terminated was she had done this before. She had left her post without permission from her supervisor. That didn't end up being an issue during the hearing, but that was definitely part of the protest that the employer said she left her post and arranged for these things. I think part of the thing is she's doing this for no valid business reason either. She's giving away some of the employer's property without any authorization at all for a reason that wouldn't make sense to the employer if she had asked people with the authority. Back to your second point, which I think was it doesn't have to be expressed, counsel indicated that the language willful and deliberate would indicate there had to be knowledge of the rule. How do you address that? Well, the law for a long time since the act was amended after this court's decision in Jackson has consistently said that a rule need not be expressed. So there are protections for what might be viewed as an implied rule. So everyone knows you're not allowed to engage in subordination. The employer wouldn't have to write that rule down for it to be a disqualifier for unemployment benefit. And that's sort of some of the protections I think I mentioned in our brief that are in the statute, just not the ones that they're advocating. So if a rule, the farmers case that we saw in our brief, the rule was that you could put some of these checks in the drawer for up to six days, and it was in there for three weeks. Well, the court said it would be unreasonable for someone to assume that the six-day rule that the employer made up and didn't consistently enforce, that would be unreasonable. And no one could deliberately and willfully violate that rule, which wasn't written down. So there are protections in the statute for employees who are seeking benefits. It's just not the one that's being advocated here today. And as we discussed in our brief, employers come in shapes and sizes. To require every rule to be expressed would put a great burden on employers. And in fact, the argument that a rule has to be expressed, or any conduct that is unlawful fits under the statute, cannot be found anywhere in the plain language, I think proves the point that this is not the way that the Act should be interpreted. But how do you specifically address opposing counsel pointing out that if it has to be willful and deliberate, how can you willfully and deliberately violate a rule that isn't in front of you? So just taking the facts of this case, for example, I think any employee would know that they couldn't give away their employer's property without authorization if they did not have that authorization themselves. That might not be a rule that's expressly written down exactly like my opposing counsel wants it to be, but that's a reasonable rule. Now, if Ms. Petrovic did not know that rule, then perhaps one could find that she did not deliberately and willfully violate it. But the mere fact that she testified that she did not know that rule doesn't mean the board had to find that she did not know that rule. There was evidence in the record that she had known about this rule through computer-based training. So the board was not required to take her word for it that she did not know about that rule. But there could be a scenario where the board could find that that's a reasonable rule that an employer might have, even though it wasn't written down, but it's not deliberately and willfully violated because there was no way for this employer to have known about that rule. So it seems like your argument is with respect to taking property, for example, you would know that the employee would have to know that that was the rule, and if it's reasonable, it's a deliberate action just based on the fact that they would have to know that that rule is in place somewhere at some time. Correct. And then the check in the drawer may be a reason. Does your argument drop off, then, with your check in the drawer example because the six days may be reasonable, but in that case you're saying it's not deliberate because they would have no way of knowing that would have to be the rule? Precisely. And in that particular case, there was evidence that the employer was not consistent in its enforcement of that rule either. So one could not deliberately and willfully violate it if some people had been allowed to break the rule that wasn't expressed and others had, so they wouldn't have known that their actions might cause them to not only be fired but ineligible for benefit. I would also like to point out on the idea of the rule but also goes to harm is after this court's decision in Jackson, the cases have been overwhelming in the appellate courts that an expressed rule hasn't been required and that potential harm is adequate, but the legislature has not acted to amend the statute again. The definition of misconduct has not changed since 1988, and the legislature is presumed to know how the courts have been interpreting the statute. And as we explained in our brief, this sort of makes sense in this area of law where these hearings that are held are 20- to 30-minute telephone hearings. Often the employer does not participate in the hearings. So to say that first of all that there's a burden on the employer goes against the whole structure of the statute. The statute talks of eligibility and talks of the board considering all the evidence in the record, regardless of what party submits it and regardless of any burden on either party. So the board is looking at whether that person is eligible under the law or ineligible under the law, not whether the employer submitted sufficient evidence to satisfy some burden. And the statute is very clear that the board is to consider all the evidence that is before it, regardless of who it's submitted by. And in fact, it would make no sense in a statutory scheme where an employer might not even participate to say that the employer had a burden. And I'd like to point out one more thing about the protest being a notice. It's not just a notice. It is a notice to the claimant that the employer is disputing the claim. However, the employer, as you can see from the record, also submits documents for the protest, documents that under the Act are considered evidence. Now, whether something is hearsay or whether something is incompetent is a question for the board to decide when something is properly objected to. Here there was no objection that Conway's testimony was not based on personal knowledge and shouldn't be considered. And in that situation, this court and the appellate courts have said that the board and any other agency may consider a hearsay testimony to the extent that it finds it probable to the question that is before it. So the board was proper in considering Conway's testimony, and it was also proper to consider the protest because that was evidence. What was submitted with the protest was the investigation that was performed by the employer, which was done by a human resources agency, along with a statement that was submitted by Petrovic herself. So it's not just a, you know, we're protesting this, check the box. It also comes along with documents that are submitted by the employer, and under the Act and regulations, those documents can be considered by the board. The fact that they were not brought up at the hearing, you know, is not to be faulted on the board or the employer. Petrovic was aware that these documents had been submitted, and the Act and the regulations permitted her at any point before the claims adjudicator, the referee, and the board to examine the file that was before the agency, and she could have raised objections to those documents if she had wanted to. And again, the federal regulations and law that govern some of this make very clear that these proceedings are supposed to be quick and efficient and simple. There are 20-minute to 30-minute telephone hearings where a referee takes questions to determine eligibility. This is not, you know, a three-day full-blown trial where every last stone is unturned and every question is asked. This is just to get enough information to determine whether the person is eligible for benefits. And the purpose of this, you know, simple, quick, efficient process is to get that person the benefits if they're eligible as soon as possible. Speaking of regulations, on pages 37 and 38 of your brief, you discuss administrative code and regulations dealing with harm and whether it could be potential. Was that an issue during the hearings? Was the regulation an issue during the hearings? It was. If you say that Petrovic doesn't challenge the validity of the regulation and that potential harm is sufficient under the regulations of case law. Well, a regulation is, you know, has the force and effect of law, and it was the law that governed. Was it a specific issue during the hearing? No one made it a specific issue. But in this case, we had testimony not only of actual harm, which was the financial loss to the employer, but testimony about non-speculative potential harm, which was about the disruption and not fully doing the load plan that was required before takeoff. So there are cases where the courts have said, this potential harm is too speculative because it's not based on any evidence in the record. And that's fair. But here we have not only evidence of actual harm, but actual evidence of potential harm that her actions caused. So this is, you know, not a case where the potential harm was even speculative. Similarly with harm, because the regulation was not challenged as valid in these proceedings until my opponent's reply brief, the department has interpreted the statute and determined that potential harm is sufficient. That interpretation of the statute is longstanding, is not unreasonable. So there's no reason for this court to determine on this case that potential harm is insufficient. And under that regulation, again, the harm here that was testified to was not only actual, but potential. In sum, there was evidence in the record for the board to decide that American had this rule prohibiting an employee from giving away its property without authorization from management or even just her own authority to give that away. Particularly where her responsibilities no longer had anything to do with customer service. She was working in the tower. And that she willfully and deliberately violated this rule, of which she was aware because she had learned about it through PC training. She went to lower level employees who lacked the authority to allow her to do this. The board considered all the evidence in the record, decided that she was not eligible for unemployment benefits, and she basically asked this court on administrative review to re-weigh the evidence and reassess credibility. And we submit that's improper under this court's clear authority. So unless there are any other questions, we ask that you affirm the judgment of the appellate court in this case. Thank you. Briefly, Your Honor. I'd like to address defendants' articulation of what the supposed common sense rule here was. Defendants just said that the rule was anyone would know you can't give away your employer's property. Well, Ms. Petrovic has said, yes, theft counts as a rule because there's already a criminal law here. But there's no evidence whatsoever that Ms. Petrovic gave anything away. And it really illustrates why a rule makes sense, why the legislature was wise to require a rule. And that is that a rule has words, and when an employer says to the board, here is what our rule says, then the board can say, okay, what's the evidence of what the claimant did, and does that evidence match up with what the rule prohibits? If the rule prohibits giving things away or issuing upgrades, then we can know. But the defendants have shifted the verbs throughout the briefs and throughout the record. Is it giving away? Is it issuing? Is it arranging? What exactly is prohibited here? We don't even know. Ms. Petrovic was clear. I didn't know that I needed management approval just to ask these questions. Did she cause catering to bring the champagne to the plane? She called them and asked if that was possible. The champagne did end up at the plane, but under nobody's version of events did Ms. Petrovic handle the champagne. The employer mentioned something like she went down to handle the champagne, but under the employer's own account, she never touched the champagne. It was a flight attendant that tried to deliver the champagne, and then Ms. Petrovic says she learned that the passenger didn't even want the champagne, and he returned it, and the employer did not object to that testimony and didn't contradict it. So the champagne didn't even end up with the passenger. But Ms. Petrovic had nothing to do with delivering it, even by the employer's hearsay account. I want to talk about the defendant's... Circumstantial evidence isn't enough. There isn't circumstantial evidence that the champagne ever reached the passenger. Under the employer's own account, it was attempted to be delivered, and then Ms. Petrovic said it wasn't delivered, and the employer didn't say, oh, that's not true. So the evidence establishes that the champagne did get delivered. It would only matter if, not if she ordered that the champagne be delivered, but that the champagne was actually opened. That only goes to harm. She didn't give away anything because she didn't take it, she didn't sneak it, she didn't misrepresent to somebody that... So the attempt to give it away is not breaking the value rule. There's no rule in the record that says you can't call catering and ask whether somebody can get a free gift or not. There's no rule that's anything like that, that Ms. Petrovic's actions could possibly fit here. And circumstantial evidence as to the passenger ending up in first class? That also doesn't mean that Ms. Petrovic gave away an upgrade. All she did was ask questions. Even under the employer's account, she asked questions of the wrong people. So whether or not the passenger ended up there, somebody else might have made an error and caused the upgrade to happen when it shouldn't have happened. But that wasn't what Ms. Petrovic did. She didn't issue an upgrade. She didn't give away anything. Does she have the status of someone in authority that another person whom she called would think that she had authority to suggest that? She was not management. And there's no evidence that she made any misrepresentation about her authority. The employer had plenty of opportunity to say she pretended to be somebody she wasn't, or she pretended to have permission when she did. The employer never said that. There was no misrepresentation. I want to talk a little bit about Kumley's testimony and just how important it is to note that while these hearings are informal, the stakes are really high for the claimant. This is about whether the claimant can pay their rent or their mortgage or not. So the informality of the hearing can't mean that the truth-seeking function of the hearing gets impaired. And it's defendants that say, well, she should have objected. They're the ones who are really counting on technical ability and having lawyers in these hearings. But if you look at all the evidence that made it into the hearing and you say only competent evidence can disqualify, there's no competent evidence there to disqualify the claimant, Ms. Petrovic. There's nothing there. When the hearing examiner said, Kumley, how do you know that this happened? He said, I'm looking at a passenger services report. Let's see, what does this report say? That report is not in the record, so we don't even know where. When he's testifying from a report that contains statements from people who we don't know who they are, what their purpose was in making those statements, what their interest was, anything. And whether they might have been surmising, guessing as to what happened. We don't know. Kumley's testimony has no probative value because he was just reading from a report that anyone could have written. It could have been second- and third-hand testimony in that report, just like in the protest. Was he repressing his recollection, or was he just reading it into the record as to what happened? I assume that when he's asked, how do you know, he would have said, I investigated, and this was said to me, or I found this. So that would have been hearsay, but at least it would have been double hearsay only. But he doesn't even say that. He says, I'm looking at this report that passenger services filed. We don't know who passenger services is. We don't know what their function is. I do want to talk a little bit about harm. There is no potential harm. Potential harm doesn't meet the definition in the statute, so that doesn't suffice. And there was no actual harm raised here because the difference in price, it wasn't caused by Ms. Petrovic, first of all, and the employer wasn't able to show that it would have sold the seat but for Ms. Petrovic. If a pilot left the cockpit and went back and talked with passengers and the copilot is asleep and they're going through a storm and the autopilot takes care of it, is that not potential harm? I'm sorry, can you repeat that question? If the pilot left the cockpit during a storm, the copilot's asleep, the autopilot's flying, but it gets through the storm. No harm. So you're saying a pilot of a plane does something really dangerous, but no harm. But there's no harm. Does that fall outside the scope of what you would define as potential harm? In a hypothetical, you can probably assume away any actual harm. But we're not saying that harm has to be physical. Harm just has to be damage. It can be mental, it can be physical, it can be financial. But it can't be theoretical. So in this all's well that ends well scenario, it may well be that a person is entitled to benefits and it doesn't quite meet our intuition of who should be entitled to benefits because, boy, that's a very serious situation. But the devil's going to be in the details in these cases, and it's a very fact-specific inquiry. And I have a hard time believing that if that scenario happened, that there isn't some actual harm that the employer would point to. Does that answer your question? If the court has no further questions. Thank you. Case number 118562, Zlata Petrovic v. Department of Employment Security, will be taken under advisement as agenda number 19. Ms. Haubauer and Ms. Weichern, thank you very much for your arguments this morning. You're excused at this time.